**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

_____

**In re:**

    **SHAW STREET PROPERTIES, LLC**
    Debtor

_____

**CHAPTER 7**

**CASE NO. 22-20486 (JJT)**

**OCTOBER 28, 2022**

## OBJECTION OF SHAW STREET PROPERTIES LLC TO THE PROOF OF CLAIM OF EASTERN CONNECTICUT SAVINGS BANK

    The Debtor in this Chapter 7 case hereby objects to that certain Proof of Claim filed October 24, 2022 on behalf of Eastern Connecticut Savings Bank, recorded as Claim No. 3 in this Court's Claims Registry. In support of this Objection, the Debtor, Shaw Street Properties LLC ("Shaw Street"), represents as follows:

    1.    On or about May 23, 2014, Shaw Street executed a Note and Mortgage in favor of Eastern Savings Bank, now known as Eastern Connecticut Savings Bank ("Eastern") in the principal sum of $1,050,000.00.

    2.    By a Summons and Complaint dated May 15, 2018 made returnable to the Superior Court for the Judicial District of New London at New London on June 12, 2018, Eastern commenced a lawsuit against Shaw Street and others pursuant to which it sought to foreclose its mortgage against the properties known as 139, 141 and 143 Shaw Street, New London that had been mortgaged to secure the repayment of the debt.

    3.    Thereafter, on June 24, 2019, Eastern filed a Motion for the Appointment of a Temporary Receiver in which it sought to have an employee of the bank made the receiver of rents. Following a hearing conducted July 17, 2019, the Court (the late Honorable Harry Calmar presiding) granted said motion and appointed the bank's

employee as the receiver. From August 1, 2019 until the ownership interest of Shaw Street in the Shaw Street Properties was extinguished by foreclosure, Eastern through its employee collected and disbursed as it chose all rents arising from the premises.

4. On March 5, 2021, Eastern filed a Motion for Judgment of Strict Foreclosure in the Superior Court. Shaw Street raised certain issues concerning the calculations of Eastern's debt which were resolved in discussions between the parties.

5. On September 14, 2021, the Superior Court entered a Judgment of Strict Foreclosure as requested by Eastern. A copy of the Notice of Judgment of Strict Foreclosure dated September 14, 2021 is attached to this objection marked as Exhibit A.

6. As evidenced by the Notice, at the hearing before Judge Calmar, the bank claimed a debt in the amount of $1,274,802.22 and presented its appraisal showing the fair market value of the property of $1,410,000.00. The Court also set Tuesday, November 9, 2021 as the law date for the owner of the equity of redemption. As there were no junior liens upon the property, title to the properties vested in Eastern on November 10, 2021.

7. Following the vesting of title, Eastern did not file a Motion for Deficiency Judgment.

8. On December 17, 2021, Shaw Street filed a Motion for Accounting and Turnover of Rent Proceeds. In said Motion, Shaw Street pointed out as Eastern's own evidence at the time of the hearing before Judge Calmar showed substantial equity in the property, and given that Eastern had taken no steps to seek a deficiency judgment, Eastern's employee, Cynthia Costner, the Court's appointed receiver should account for the rents received and thereafter, the Court should order the turnover of the retained rents

to Shaw Street.

9. Eastern did not object to the relief sought by Shaw Street in the Motion for Accounting and for a Turnover of Rents. On January 6, 2022, Eastern filed its own Motion for the Discharge of the Receiver and for the Approval of the Receivers Report. Shaw Street raised no objection to that relief and the parties agreed to the entry of an Order by the Court (the Honorable Emmet L. Cosgrove, JTR) requiring that the sum of $190,375.32 be paid over to Boatman Law LLC. A copy of Judge Cosgrove's Order is attached to this Objection marked as Exhibit B.

10. At the end of February 2022, Attorney Jeffrey Hellman of New Haven, Connecticut purporting to act on behalf of US Bank N.A. as Trustee for Velocity Commercial Capital Loan Trust 2016 – 2 ("Velocity"), having learned of the entry of the rent Order, filed *ex parte* papers in the Superior Cour,t Judicial District of Windham at Putnam, seeking an attachment or a garnishment of the fund due to be paid by Eastern to Shaw Street. As a result of certain Orders inappropriately obtained by Attorney Hellman, the turnover of the rents to Shaw Street was delayed. However, on March 24, 2022, a Stipulation was filed in the Putnam Superior Court pursuant to which the Court (Jack Fischer, J.) ordered Eastern to turn over the rents to Shaw Street via its counsel, Boatman Law LLC. A copy of Judge Fischer's Order and Stipulation is attached to this Objection as Exhibit C.

11. All this while, neither Shaw Street nor its principal, Pierce Hall, was contacted by Eastern concerning the fact that there was property still in storage in one of the three buildings on Shaw Street. However, on Friday, July 15, 2022 at approximately 3:00 p.m., Pierce Hall, Member of Shaw Street, found papers wedged in the side door of

his home from a Marshal indicating that the Marshal intended to appear at 8:00 a.m. the following Monday morning at the Shaw Street properties then and there to remove all of the contents of the property at 141 Shaw Street.  A copy of the Marshal's papers left at Mr. Hall's home are attached to this Objection marked as Exhibit D.

12. Upon information and belief, the date and time of service of the Writ of Execution was contrived by Attorney Michael Bonnano in concert with Eastern in the hopes that all of the contents of the building, no matter by whom owned, could be forfeited and the proceeds apparently taken by Eastern upon the disposition of same.

13. In the circumstances, the only remedy that appeared to be available to block Eastern and Attorney Bonnano's plan was the commencement of this Chapter 7 case.

14. Apparently, the plan to essentially confiscate all of the personal property stored in the building having failed as a result of this Chapter 7 case, Eastern has now filed a Proof of Claim asserting a claim "greater than $92,155.22".

15. Shaw Street maintains that Eastern is not entitled to a claim against it in this Chapter 7 case.

16. To begin with, Eastern makes a claim for attorneys' fees apparently incurred by the Norwich firm of Block Janney & Pascal, LLC in the amount of $6,601.05.  There is no legal basis upon which Eastern can claim a right to payment against Shaw Street for attorneys' fees incurred either in preparing the paperwork necessary to account to the Superior Court for Eastern's receiver or for activities performed resulting from Attorney Hellman's efforts to lock up the rents.  The Proof of Claim includes no detail on the work performed by Block Janney & Pascal.  Obviously, Shaw Street does not consent to the payment of these fees.

17. Similarly, included in Eastern's Proof of Claim is the sum of $8,457.50 for work allegedly done by Geraghty & Bonnano, LLC. There was nothing in the paperwork submitted with the Proof of Claim that can explain what Attorney Bonnano was doing to generate these fees. Shaw Street does not consent to the payment of all or any part of Mr. Bonnano's fees from its property.

18. Next, Eastern claims a right to be reimbursed for a one-time payment made to counsel for the City of New London in the amount of $31,336.92. Upon information or belief, this payment was made because the City of New London not only had a judgment but a senior lien upon the property foreclosed. As the property when foreclosed had a value of $125,000.00 in excess of the debt, Eastern has no right to seek indemnity from Shaw Street. The Proof of Claim seems to suggest that the obligation due to the City of New London was somehow concealed from the bank, but the lawsuit that resulted in the judgment was a matter of public record and appeared on the Judicial website whenever the name Shaw Street Properties was inserted. Also, as the bank was in complete control of the premises and it is hard to believe that its own receiver had no knowledge concerning the fact that there were unpaid water or other utility charges against the property.

19. Eastern next seeks $45,759.75 for storage fees for personal property. The bank was not storing any property for Shaw Street. That certain affiliates of Shaw Street, that is to say, entities in which Pierce Hall also had an interest, had property there does not translate to a money claim against Shaw Street.

20. An indeterminant claim has also been presented for the reimbursement of costs associated with the removal of any remaining personal property. Shaw Street has

been taking steps to remove all of the personal property during the course of this Chapter 7 case but has fully emptied the building. In the circumstances, Eastern has not presented any viable legal theory pursuant to which it has a right to reimbursement if indeed it winds up removing, storing or selling, as the case may be, any remaining personal property. It should be noted in passing that Eastern, its agents, servants, employees and attorneys, have had access to this property exclusively since July of 2019. How they might have been surprised that there remained personal property of others on the premises is a headscratcher.

**SUMMARY**

21. The one issue that must give the Court pause is why, having been in possession of the property either as its own receiver or later as owner since at least July of 2019, Eastern did not reach out to Shaw Street at any time to arrange for the orderly removal of property. Perhaps wrongly, Mr. Hall assumed that unless and until a buyer was found, Eastern did not have an issue with property located in the building and, even if a buyer was found, Mr. Hall held out the hope that he could negotiate a storage arrangement, to the extent he needed one, with the new owner. Instead, Mr. Hall had no contact from Eastern or its representatives until by sheer luck he found papers left at his home by Eastern's Marshal on Friday July 15, 2022 at approximately 3:00 in the afternoon telling him that an eviction was going to take place the following Monday morning at 8:00 a.m. If Eastern's goal was to have the property empty because it had a buyer, this seems to be a very strange way to go about accomplishing it.

22. In the circumstances, Shaw Street objects to the totality of the Proof of Claim submitted by Eastern and, unless it is withdrawn as it should be, Shaw Street

requests that a hearing be scheduled to determine whether any legal basis at all exists for all or any part of the claims asserted.

Respectfully submitted,
Shaw Street Properties LLC

　　/s/ Patrick W. Boatman
Patrick W. Boatman, Esq.
Boatman Law LLC
155 Sycamore Street
Glastonbury, CT 06033
Ph: 860-291-9061
Fax: 860-291-9073
E-mail: pboatman@boatmanlaw.com
Fed. Bar. No. ct05336

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
|     SHAW STREET PROPERTIES, LLC | CASE NO. 22-20486 (JJT) |
|     Debtor | OCTOBER 28, 2022 |

## CERTIFICATION OF SERVICE

    I hereby certify that a copy of the foregoing Objection has been sent electronically via the Court's PACER system to all parties of record with electronic addresses on this 28th day of October, 2022.

                                                /s/ Patrick W. Boatman
                                        Patrick W. Boatman, Esq.
                                        Boatman Law LLC
                                        155 Sycamore Street
                                        Glastonbury, CT 06033
                                        Ph: 860-291-9061
                                        Fax: 860-291-9073
                                        E-mail: pboatman@boatmanlaw.com
                                        Fed. Bar. No. ct05336

| | |
|---|---|
| DOCKET NUMBER: **KNLCV186035422S**<br>EASTERN SAVINGS BANK<br>vs.<br>NATION PROPERTIES LLC ET AL | JUDICIAL DISTRICT<br>OF NEW LONDON/NORWICH<br>AT NEW LONDON<br><br>JUDGMENT DATE:<br>**Tuesday, September 14, 2021** |

## Notice of Judgment of Strict Foreclosure

Property Address: 139, 141 & 143 Shaw Street, New London CT

**Judgment of Strict Foreclosure is hereby entered as follows:**

FMV 139 Shaw Street, New London = $150,000 for land, $500,000 for improvements FMV 141 Shaw Street, New London = $225,000 for land, $255,000 for improvements FMV 143 Shaw Street, New London = $150,000 for land, $130,000 for improvements

| | | | |
|---|---|---|---|
| Debt: | $1,252,670.22 | Appraisal Fee: | $5,850.00 |
| Attorney Fees: | $22,132.00 | Title Search Fee: | $475.00 |
| Total: | $1,274,802.22 | Fair Market Value: | $1,410,000.00 |
| | | Land: | $525,000.00 |
| | | Improvements: | $885,000.00 |

LAW DAY SET FOR Tuesday, November 09, 2021, for the owner of the equity of redemption, and subsequent days for subsequent encumbrancers in the inverse order of their priorities.

BY THE COURT (**Hon. Harry Calmar**)

*Copies sent Tuesday, September 14, 2021 to:*
*BLOCK JANNEY & SISLEY LLC; BOATMAN LAW LLC*

_____
Sharon Purcell, Admin. Asst.

**EXHIBIT A**

| | |
|---|---|
| **DOCKET NO.: KNL-CV-18-6035422-S** | : **SUPERIOR COURT** |
| **EASTERN SAVINGS BANK** | : **J.D. OF NEW LONDON** |
| | : **AT NEW LONDON** |
| **NATION PROPERTIES, LLC, ET AL** | : |

### ORDER GRANTING, IN PART, THE MOTION OF SHAW STREET PROPERTIES, LLC FOR THE TURNOVER OF RENT PROCEEDS

The Court, having previously considered the Plaintiff's Motion to Approve Receiver's Final Report and Application for Discharge (Doc. 158.00) and having approved said report and granted the discharge of the receiver, and absent objection by the Plaintiff to the Motion For Accounting and Turnover of Rent Proceeds dated December 17, 2021 (Doc. 157.00) filed on behalf of the Defendant, Shaw Street Properties, LLC, the former owner of the premises,

**IT IS HEREBY ORDERED,** adjudged and decreed that:

The sum of $190,375.32 being in possession of the Receiver at the time of her discharge be paid to Boatman Law LLC, attorneys for Shaw Street Properties, LLC.

Dated at New London, Connecticut this 17 day of February, 2022.

By the Court

The Honorable Emmet L. Cosgrove, Presiding

EXHIBIT B

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent electronically, to the following parties of record on this 10th day of February, 2022:

Block Janney & Sisley
138 Main Street
Norwich, CT 06360
asisley@bjplawyers.com

Patrick W. Boatman

| | |
|---|---|
| DOCKET NO. WWM-CV-18-6013074-S : | SUPERIOR COURT |
| U.S. BANK NATIONAL : | J.D. OF WINDHAM |
| ASSOCIATION, AS TRUSTEE P | |
| FOR VELOCITY COMMERCIAL : | AT PUTNAM |
| CAPITAL LOAN TRUST 2016-2 | |
| : | |
| V. | |
| J&M HOLDINGS, LLC ET AL : | MARCH 25, 2022 |

**ORDER PARTIALLY VACATING PRIOR ORDERS RELATIVE TO EX PARTE PREJUDGMENT REMEDY AND DIRECTING COMPLIANCE WITH ORDER OF THE COURT (COSGROVE, JTR, PRESIDING)**

Following a hearing before the Court and on agreement of the parties, This Order hereby enters as follows:

1. That the Order Granting Application for Ex Parte Prejudgment Remedy to the extent it purports to apply to funds either in the possession of or due to Shaw Street Properties, LLC, is hereby vacated in part as set forth in ¶¶ 2-5.

2. That the Supplemental Order Granting Application for Ex Parte Prejudgment date February 25, 2022 is hereby vacated as it relates to anything having to do with funds presently in the custody of Eastern Connecticut Savings Bank, or Cynthia Currier in her capacity as the former receiver of rents, or Boatman Law LLC or the garnishment of any funds due to Shaw Street Properties, LLC or the attachments of all assets of Shaw Street Properties, LLC except as set forth in the remainder of this Order.

3. That the garnishee Eastern Connecticut Savings Bank is hereby directed to comply with the Order of the Honorable Emmet L. Cosgrove, Presiding in that certain civil action encaptioned Docket No.: KNL-cv-18-6035422-S in which Eastern Savings Bank is Plaintiff Shaw Street Properties, LLC was formerly a Defendant and to turn over the amount of $190,375.32 to Boatman Law LLC as attorneys for Shaw Street Properties,

EXHIBIT C

LLC within 5 business days of the date of this Order. Service of this Order by facsimile or any other means upon Eastern Connecticut Savings Bank, Cynthia Currier, former receiver or Eastern Saving Bank's counsel, Amanda Sisley shall be sufficient to start the running of said 5 day period.

4.   Boatman Law, LLC will hold the $190,375.32 in the Boatman Law LLC IOLTA account with no funds to be distributed except as set forth in paragraph 5 below, or upon further order of this Court.

5.   Boatman Law, LLC shall be permitted to pay itself any outstanding fees owed to it by Shaw Street Properties, LLC. The amount of said fees shall be shown to Plaintiff by means of a sworn written statement from one of the members of Boatman Law, LLC attesting to the debt and the amount. Any other payments shall be made only pursuant to written consent of the Plaintiff or order of this Court, except as set forth in paragraph 6.

6.   Upon entry by the Court of any Charging Order entered against the membership interest of Pierce Hall in Shaw Street Properties, LLC as final and non-appealable, the Charging Order shall modify and/or supersede this Order.

7.   This Order does not impair any right of Shaw Street Properties, LLC, to seek additional relief regarding the turnover of these funds. Nothing in this Order shall prejudice any attempt by Plaintiff to cite in Shaw Street Properties, LLC or to reverse pierce the corporate veil to reach its assets. Similarly, nothing in this Order shall prejudice the rights of Shaw Street Properties, LLC to object or defend such actions.

Dated at Putnam, Connecticut this \_\_\_\_ day of March, 2022.

By the Court

_____

| APPLICATION AND EXECUTION FOR EJECTMENT MORTGAGE FORECLOSURE JD-CV-30 Rev 1-18 C.G.S. §§ 49-22, 49-31p; 42 USC 1437f (o) | | STATE OF CONNECTICUT SUPERIOR COURT www.jud.ct.gov |
|---|---|---|
| **Instructions to Applicant** 1. Prepare an original and 3 copies; forward the original and 2 copies of this form and any attachments to clerk. 2. After return of signed form from clerk, forward the original and a copy of form and any attachments to a proper officer. | **Instructions to Clerk** 1. Forward original and copy of this form and any attachments to applicant or attorney. 2. Retain copy of signed execution. | **Instructions to Proper Officer** 1. Complete items 3 and 5 at bottom. 2. Make return within 60 days. |

**Name of case**
EASTERN SAVINGS BANK v. NATION PROPERTIES LLC Et Al

**To:** Mark E. Block, Esq.
Block, Janney & Sisley, LLC
138 Main Street
Norwich, CT 06360

Docket number: KNL-CV18-6035422-S
Date of judgment: 09/14/2021
Date also was transferred: 11/10/2021
Date lis pendens recorded: 05/17/2018

**Address of Judicial District Court location** (Number, street, town, and zip code)
70 Huntington Street, New London, CT 06320

**Address of premises** (Attach complete legal description of land)
139, 141 & 143 Shaw Street, New London, CT 06320

**Name(s) of person(s) entitled to possession**
Eastern Connecticut Savings Bank

**Name(s) of person(s) in possession**
SHAW STREET PROPERTIES, LLC; M.J. HOLDINGS LIMITED LIABILITY COMPANY, RIVERBEND BUILDERS OF STONINGTON, LLC and PIERCE HALL

Is person in possession a "bona fide tenant" as described in section 49-31p(b) of the Connecticut General Statutes? [X] No  [ ] Yes  If yes, when was notice to vacate provided to this person(s)? _____ (Date). Does person(s) in possession have a lease? [X] No [ ] Yes  If yes, when does lease end? _____
(Date). Does person(s) in possession occupy the premises under a federal or state subsidized tenancy program (ex. Title VIII)? [X] No [ ] Yes  If yes, when does tenancy end? _____ See "Notice" on back/page 2 of this form.

Signature of applicant: /s/ Mark E. Block
Mark E. Block, Esq.
Date: 6/17/2022

**To: Any Proper Officer**
By the authority of the State of Connecticut, you are commanded to cause the said person(s) entitled to possession to have the seizin and peaceable possession of the premises described herein, and to put and eject the said person(s) in possession, out of possession thereof, and to put the person(s) entitled to possession into the peaceable and quiet possession thereof, provided that no person shall be ejected who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens. If said person(s) in possession have not removed all their possessions and personal effects, then you may remove them and deliver them to the place of storage designated by the chief executive officer of the town for such purpose. Prior to removal, you must give the chief executive officer of the town notice of the removal, stating the date, time, and address of the removal as well as a general description, if known, of the types and amount of property to be removed from the land and be delivered to the place of storage. Prior to giving notice to the chief executive officer you must use reasonable efforts to locate and notify the person(s) in possession of the date and time the removal is to take place and the possibility of a sale of their possessions pursuant to General Statute 49-22 and you must provide clear instructions as to how and where such person or person may reclaim any possessions and personal effects removed and stored, including a telephone number that such person or persons may call to arrange release of such possessions and personal effects.

Make service and due return within 60 days from the date hereof.

Signed: Bryan Fage
Date signed: 6/20/22

## Notice To Persons In Possession Of Premises Subject To Ejectment

**Important:** If you are in possession of the premises and you were not named as a party to this foreclosure action, you are not subject to this execution unless you are a transferee or lienor who is bound by the judgment by virtue of a lis pendens.

1. The person(s) entitled to possession have been given the right to possession of these premises by a judgment of the Superior Court. This means that you must move out of the premises described on the attachment(s) to this form by the date given at right.
2. If you do not move out by that date, this paper, which does not have to be handed to you personally, gives a proper officer the legal right to remove your possessions and personal effects and deliver them to the place of storage designated by the chief executive officer in the town.
3. Your possessions & personal effects will be stored at: Mathias RR 85 Wake Rd
You may call: 860 625-0295 to reclaim any of those possessions and personal effects and to arrange to have them given back to you.

4. If your possessions and personal effects are removed and stored and you do not reclaim them and the expense of the storage is not paid to the chief executive officer of the town within 15 days, then they may be sold by the town under section 49-22 of the Connecticut General Statutes.
5. If you do not move your possessions and personal effects by: (To be completed by proper officer)
Date: 7-18-22   Time (a.m./p.m.): 8:00 AM
I will return to remove your possessions and personal effects and store them.

Page 1 of 2

EXHIBIT D

A TRUE COPY
ATTEST
JOHN P SULLIVAN
STATE MARSHAL
860 625-0295

**Notice:**

Connecticut General Statutes Section 49-31p provides:

(a) In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property that has a return date on or after July 13, 2011, but not later than December 31, 2017, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to
   (1) the provision, by such successor in interest, of a notice to vacate to any bona fide tenant not less than 90 days before the effective date of such notice; and
   (2) the rights of any bona fide tenant, as of the date absolute title vests in such successor in interest
      (A) under any bona fide lease entered into before such date to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90-day notice under subdivision (1) of this subsection; or
      (B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90-day notice under subdivision (1) of this subsection
except that nothing under this section shall affect the requirements for termination of any federally subsidized or state-subsidized tenancy or of any state or local law that provides longer time periods or other additional protections for tenants.

(b) For purposes of this section, a lease or tenancy shall be considered bona fide only if (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant, (2) the lease or tenancy was the result of an arms-length transaction, and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a federal, state or local subsidy.

(c) For purposes of this section, the term "federally-related mortgage loan" has the same meaning as in 12 USC 2602(1), the Real Estate Settlement Procedures Act of 1974. For purposes of this section, the date of a notice of foreclosure shall be deemed to be the date on which complete title to a property is transferred to a successor entity or person as a result of an order of a court or pursuant to provisions in a mortgage, deed of trust or security deed.

## Return Of Service

Then and there, by virtue of the foregoing execution,

| On (Date) | At (Time) |
|---|---|
|  | ____.M. |

☐ I notified the person(s) in possession.

☐ I used reasonable efforts to locate the person(s) but was unable to notify him/her.

Thereafter I notified the chief executive officer of the town where the premises are situated,

| On (Date) | At (Time) |
|---|---|
|  | ____.M. |

that the eviction of the person's(s') possessions and personal effects would take place:

| On (Date) | At (Time) |
|---|---|
|  | ____.M. |

and I further advised said chief executive officer, so far as known, of the general description, types and amount of property to be removed from said premises.

And afterwards, the person's(s') possessions

| On (Date) | At (Time) |
|---|---|
|  | ____.M. |

☐ had been removed.

☐ were removed by me and stored and I put the person(s) in possession of said premises.

| Signed (Proper Officer) | Date signed |
|---|---|
|  |  |
| Fees | |

JD-CV-30 (back/page 2) Rev. 1-16

---

**ADA Notice**

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at www.jud.ct.gov/ADA.

## SCHEDULE "A"

### 139 SHAW STREET, NEW LONDON, CT

That certain lot of land, with the buildings thereon standing, situated in said City of New London, Connecticut and bounded and described as follows, to wit:

Beginning at its southwest corner in the east line of Moore Court at its intersection with land now or formerly of The Savings Bank of New London at a point ten feet north of land now or formerly of John Macione and Stella K. Macione; thence northerly along Moore Court Fifty (50) feet to land formerly of John C. Geary; thence easterly along said land formerly of John C. Geary, land formerly of J. N. Lapointe and land formerly of Walter Church FOUR Hundred EIGHTEEN 418 feet to land now or formerly of Jacob Lubchansky; thence southerly along said land now or formerly of Jacob Lubchansky and land formerly of Nicola Scarpaunza One Hundred Twenty-two and Seven-tenths (122.7) feet to land now or formerly of Carmelo J. Nazzetta and Rose M. Nazzetta; thence westerly along said Nazzetta land One Hundred Seventy-nine and Four-tenths (179.4) feet to a drill mark in a boulder; thence southwesterly along said Nazzetta land Ninety-six and Four-tenths (96.4) feet to land of The Savings Bank of New London, formerly of Leon St. Germain; thence northerly along said land of The Savings Bank of New London Fifty-eight and Thirty-three hundredths (58.33) feet to said land now or formerly of said John Macione and Stella K. Macione; thence easterly along said Macione land Thirty (30) feet to an angle; thence northerly along said Macione land and land of The Savings Bank of New London Fifty (50) feet to another angle; thence westerly along said land of The Savings Bank of New London Ninety (90) feet to the point of beginning.

Being the same premises conveyed to Napoleon Blake King by Everett M. Allen, Incorporated by deed dated April 2, 1946 and recorded in Volume 238, Page 503 of the New London Land Records, together with the privilege and subject to the condition relating to a sewer in Shaw Street as expressed in said deed.

Excepting therefrom a portion of the premises conveyed to Michael S. Fenton and Kathleen L. Fenton in Volume 694, Page 139 of the New London Land Records.

### C-141 SHAW STREET, NEW LONDON, CT

A certain tract of land with the buildings thereon situated in the Town of New London, County of New London and State of Connecticut, bounded and described as follows:    Commencing in a monument in the southwesterly line of Shaw Street at the northerly corner of land of Anthony P. Nazzetta and Lillian N. Nazzetta, which monument is 19.01 feet northwesterly from another monument in the northwesterly line of Shaw Street, and thence running S 45° 42' 20" West 200.09 feet along land of Anthony P. Nazzetta and Lillian N. Nazzetta to the intersection of the stone walls at the northwesterly corner of said Nazzetta land; and thence running S 45° 39' 20" West 103.41 feet along land now or formerly of James W. Smith and land now or formerly of the State of Connecticut, to a monument; and thence running S 70° 13' 20" West 108.21 feet along land now or formerly of the State of Connecticut, land now or formerly of Mary Ranzo and land now or formerly of the Estate of Julia Faris to a monument; and thence running N 23° 11' 45" West 129.53 feet along a fence and land now or formerly of John and Mary Bruno to a monument; and thence running N 14° 13' 20" East 96.40 feet along a fence and land now or formerly of Napoleon Blake King to a monument; and thence running N 59° 23' 25" East 179.40 feet along a fence and said King land now or formerly of Leslie and Elizabeth Cornish; and thence running southeasterly along a concrete wall and along said Cornish land and along land now or formerly of Mary R. Rogovin to the end of said wall; and thence continuing in the same course 38 feet to a point 11 feet, more or less, northeasterly from a monument as measured along a line running N 45° 42' 20" East from said monument; and thence running N 45° 42' 20" East 123 feet, along said Rogovin land to a monument in the northwesterly line of Shaw Street; and thence running S 32° 5' 55" East 53.16 feet along Shaw Street to the monument at the place of beginning.

### 143 SHAW STREET, NEW LONDON, CT

A certain piece or parcel of land with the buildings and improvements thereon, situated in the Town of New London, County of New London and State of Connecticut, known as No. 143 Shaw Street. Said premises are located on the westerly side of Shaw Street and are more particularly bounded and described as follows:

Northerly:   by land now or formerly of Nazzora Brothers, Incorporated, 209.5 feet;

Easterly:    by Shaw Street, 106 feet, more or less;

Southerly:   by land now or formerly of Anna M. Cinquegrani, 206.5 feet; and

Westerly:    by land now or formerly of James W. Smith and Lillian M. Smith, 46 feet.